IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | | |
|---|---|---|
| CODY ANNETTE BLAINE, | ) | CV-17-98-H-DLC-JTJ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND |
| | ) | RECOMMENDATIONS |
| NANCY BERRYHILL, | ) | |
| Acting Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## I.  SYNOPSIS

Cody Blaine ("Ms. Blaine") seeks disability benefits under the Social Security Act (the "Act").  The Social Security Administration determined that although she has severe impairments she is capable of performing past relevant work as a customer service representative that exists in significant numbers in the national economy and therefore is not entitled to benefits.

That determination is not supported by substantial evidence and is based on legal error. Therefore, Ms. Blaine's Motion for Summary Judgment (Doc. 11) should be granted in part, and denied in part, for the reasons set forth below.

## II.   JURISDICTION

Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g) (2015). The case is assigned to United States District Court Judge Dana Christensen and referred to the undersigned to submit findings and recommendations on dispositive motions. (Doc. 10). Venue is proper in the Helena Division of the District of Montana because Ms. Blaine resides in Deer Lodge, Powell County, Montana. (Doc. 1 at ¶2); 42 U.S.C. 405(g); Local Rule 1.2(c)(2).

## III.   STATUS

Ms. Blaine applied for Security Disability Insurance Benefits on February 25, 2014, alleging a disability onset date of October 16, 2013. (Doc. 7 at 210-22). The Social Security Administration initially denied her claim on August 24, 2014. (*Id*. at 140-44) and upon reconsideration in an undated decision. (*Id*. at 152-57). On January 28, 2015, Ms. Blaine timely filed a

written request for a hearing before an administrative law judge ("ALJ"). (*Id.* at 140-44). The ALJ held a hearing on November 17, 2016. (*Id.* at 30-52).

The ALJ rendered a decision denying Ms. Blaine's claim on March 15, 2017. (*Id.* at 11-27). Ms. Blaine timely requested that the Social Security Administration review the ALJ's denial of her claim on March 24, 2017. (*Id.* at 202-203). On August 15, 2017, the Appeals Council for Social Security Administration denied Ms. Blaine's request for review on April, making the ALJ's decision is the final decision of the Commissioner. (*Id.* at 1-5).

On April 3, 2018, Ms. Blaine filed an opening brief requesting the Court to reverse or remand the Commissioner's decision. (Doc. 11). On April 30, 2018, the Commissioner filed a response brief. (Doc. 12). Ms. Blaine filed a reply brief on May 13, 2018. (Doc. 13).

Ms. Blaine was born on February 4, 1960. (Doc. 7 at 217). She was fifty-four years old when she filed her application on April 10, 2014. (*Id.*)

## IV.  STANDARDS

### A.    Review

Review in this case is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by

substantial evidence or where the decision is based on legal error.  *Maounis v. Sheckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence has also been described as "more than a mere scintilla" but "less than a preponderance."  *Desrosiers v. Sec. of Health and Hum. Services*, 846 F.2d 573, 576 (9th Cir. 1988).

The district court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion.  *Green v. Sheckler*, 803 F.2d 528, 530 (9th Cir. 1986).  The Court may reject the findings not supported by the record, but it may not substitute its findings for those of the Commissioner.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

   **B.     Disability criteria**

A claimant is disabled for purposes of the Social Security Act if the claimant demonstrates by a preponderance of the evidence that: (1) the claimant has a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than twelve months"; and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work, but also cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Comm'r of Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. §1382(a)(3)(A)-(B)).

The SSA regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920. The five steps of the inquiry are:

1.    Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. See 20 C.F.R. §§ 404.1520(b), 416.920(b).

2.    Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. See 20 C.F.R. §§ 404.1520(c), 416.920(c).

3.    Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. See 20 C.F.R. §§ 404.1520(d), 416.920(d).

5

4.   Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. See 20 C.F.R. §§ 404.1520(e), 416.920(e).

5.   Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. See 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Id* at 954. The claimant has the burden of proof for steps one through four, and the Commissioner has the burden of proof for step five. *Id.*

## V.   BACKGROUND

### A.   Ms. Blaine's hearing testimony

On November 17, 2016, Ms. Blaine appeared with her counsel for a hearing in front of ALJ Steven A. DeMonbreum in Eugene, Oregon. (Doc. 7 at 30). Ms. Blaine testified that she had a three-level fusion on her neck, and was diagnosed with post-laminectomy syndrome. (*Id*. at 37). She explained that she was in a car accident in 1989, which resulted in occipital neuralgia even before her fusion. (*Id*. at 38).

Ms. Blaine testified that she had migraines before the surgery, but that her headaches changed after the fusion; she no longer has light or odor sensitivity, but now her headaches are centered in the base of her skull. (*Id*.) She explained that her occipital nerve is being pinched, and there is no cure

6

for it.  (*Id.* at 39).  Ms. Blaine stated that she did a medial branch injection on the right side of her head, and that while it provided relief, she could no longer afford it after losing her insurance.  (*Id.*)  Ms. Blaine testified that she is a candidate for a radiofrequency treatment which will obliviate occipital nerves, but it is not covered by Medicaid.  (*Id.*)

As for her symptoms, Ms. Blaine testified that her headaches are worse when she woke up, and that her headaches could last from one, to three, to five days, even as long as seventy days.  (*Id.* at 40).

After her surgery, Ms. Blaine testified that she was doing well, but that she later felt a large pop and excruciating pain, and after x-rays, the doctor said that a piece of scar tissue had broken loose, which is causing the headaches.  (*Id.* at 40-41).  After the surgery, the headaches became more severe and more frequent.  (*Id.* at 41).  She testified that her headaches never go away, and that her baseline pain was a 3 or a 4 out of 10 on any given day; her headache while testifying was a 7.5 or 8 out of 10.  (*Id.* at 42).  Ms. Blaine testified that she gets these headaches about three times per week, and that she is usually bedridden for the entire day.  (*Id.* at 43).  She testified that even though she made the effort to be at the hearing while in pain, she could not

7

attend a week-long hearing even if it meant her not getting disability benefits. (*Id*. at 43-44).  Her headaches are random with no discernable pattern.  (*Id*. at 44).

Ms. Blaine testified that she drove from Oregon to Deer Lodge, Montana, in order to be with her mother.  (*Id*. at 45).  She said that she cannot drive when she has a bad headache, but can make the trip if her headaches are not too disabling.  (*Id*.)  She testified that if her headaches are not bad, she can do chores around the house and help her mother, but on bad days her mother has to take care of her.  (*Id*. at 46).  She estimates she can function four days per week at the most.  (*Id*. at 47).

Ms. Blaine testified that she was working in a clerical position as a manager of a mobile home park up to the day before her surgery.  (*Id*.)  Her tasks, she estimates, were approximately five hours per day of clerical work (applicant screening, application filing, paperwork, etc.), and three hours per day doing physical work (lawn care, collecting rent, etc.).  (*Id*. at 47-48).  She has worked the same job previously with three other employers.  (*Id*. at 48).  After her surgery, Ms. Blaine testified that she took a medical leave which she expected to last only six to eight weeks.  (*Id*. at 48-49).  As the headaches

worsened, Ms. Blaine testified that she could not complete physical therapy, and could not return to working thirty-two hours per week, so she resigned and vacated her apartment.  (*Id*. at 49).

As for previous work, Ms. Blaine testified that she worked at a full-service laundromat, did freight work at K-Mart, worked at a Movie Gallery, and worked as a paralegal.  (*Id*. at 49-50).  She also had her own business, Number One ACT Services, a trucking company, from 2005-2008.  (*Id*. at 50).  She also worked out of a temp agency called Higher Caller, where she was a receptionist.  (*Id*. at 51).

Finally, Ms. Blaine testified that she had driven to Montana four times since 2014.  (*Id*. at 52).

**B.    ALJ's determination**

At step one, the ALJ determined that Ms. Blaine had not engaged in substantial gainful activity since her alleged disability onset date of October 16, 2013 (*Id*. at 16).

At step two, the ALJ found that Ms. Blaine has the following severe impairments: degenerative disc disease, status post-cervical spine fusion, chronic occipital neuralgia/headaches, cervical radiculopathy, and cervical

post-laminectomy syndrome.    (*Id.* (citing 20 CFR 404.1520(c) and 416.920(c)).

At step three, the ALJ found that Ms. Blaine did not have an impairment or combination of impairments that met or were medically equal to one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).  (*Id.* at 17).

At step four, the ALJ determined that Ms. Blaine had the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations:

> The claimant can lift/carry up to 10 pounds frequently, and 20 pounds occasionally.  She can stand/walk about six out of eight hours and sit about six out of eight hours with normal breaks.  She can only occasionally push/pull with her bilateral upper extremities bilaterally. The claimant can frequently climb ramps/stairs, but can never climb ladders, ropes, or scaffolds.  She can only occasionally balance, stoop, kneel, and crouch, but can never crawl.  The claimant can occasionally reach overhead bilaterally.  She must avoid all exposure to vibrations and hazards, such as dangerous machinery and unprotected heights.

(*Id.*)

At step five, the ALJ determined Ms. Blaine is capable of performing past relevant work as a receptionist, sales clerk, legal assistant, and property manager.   This work does not require the performance of work-related

activities precluded by the claimant's RFC.  (*Id.* at 20).

### C.    Ms. Blaine's position

Ms. Blaine argues the Commissioner's decision should be reversed and

remanded because the decision is based on the following legal errors:

1.    The ALJ issued a finding regarding Ms. Blaine's RFC that did not encompass all limitations supported by the record and is not supported by substantial evidence, (Doc. 11 at 7);

2.    The ALJ improperly assessed and rejected the opinions of Ms. Blaine's treating source, (*Id.* at 19);

3.    The ALJ improperly rejected Ms. Blaine's testimony, (*Id.* at 23); and

4.    The ALJ improperly assessed and rejected the third-party testimony, (*Id.* at 25).

### D.    The Commissioner's position

The Commissioner argues that:

1.    The ALJ reasonably rejected Ms. Blaine's alleged pain because it was inconsistent with the objective medical findings as well as Ms. Blaine's own statements, (Doc. 12 at 8);

2.    The ALJ reasonably rejected the treating physician's assistant's opinion because it was inconsistent with the medical records and her own clinical findings, (*Id.* at 14);

3.    The ALJ reasonably discounted lay witness testimony because it was inconsistent with the record evidence, (*Id.* at 19); and

4.   Substantial evidence supports the ALJ's RFC finding because it included all limitations that were supported by the record evidence.  (*Id.* at 22).

//

//

# VI.   ANALYSIS

## A.   Ms. Blaine's RFC

### 1.   Legal standard

The ALJ determines residual functional capacity (RFC) based upon medical records, physicians' opinions, and the claimant's description of her limitations. 20 C.F.R. §§404.1545(a), 416.945(a)(3).   A claimant does not establish error at step five by simply restating arguments that the ALJ erred in discounting certain evidence.   *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1176-77 (9th Cir. 2008).   Furthermore, in assessing a claimant's residual functional capacity, the ALJ is not required to take into account claimed limitations the ALJ found to be incredible or not supported by the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

In determining a claimant's RFC, the Commissioner must consider both the medical evidence of record, but also "subjective symptoms" such as

"fatigue and pain." *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996).  In assessing a claimant's RFC, the ALJ is required to consider all of the claimant's medically determinable impairments, including those medically determinable impairments that are not "severe," and any related symptoms that affect what the claimant can do in a work setting.  20 C.F.R § 404.1545; 20 C.F.R. § 416.945.  The ALJ is responsible for determining credibility of subjective evidence, and her findings must "be supported by specific, cogent reasons."  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

## 2.    Analysis

An ALJ's RFC determination is proper so long as it includes "those limitations for which there was record support that did not depend on [the claimant's] subjective complaints." *Bayliss*, 427 F.3d at 1217.  In assessing a claimant's RFC, the ALJ is required to consider all of the claimant's medically determinable impairments, including those medically determinable impairments that are not "severe," and any related symptoms that affect what the claimant can do in a work setting. 20 C.F.R § 404.1545; 20 C.F.R. § 416.945.

The ALJ determined at step two that Ms. Blaine had several "severe impairments," including degenerative disc disease, status post cervical spine fusion, *chronic occipital neuralgia/headaches*, cervical radiculopathy, and cervical post-laminectomy syndrome.  (Doc. 7 at 16) (emphasis added).  The ALJ further stated that Ms. Blaine's "medically determinable impairments could reasonably be expected to produce some of [Ms. Blaine's] alleged symptoms."  (*Id*. at 18).  However, the ALJ stated that Ms. Blaine's statements concerning the intensity, persistence, and limiting effects of her symptoms were not fully consistent with the evidence in the record.  (*Id*.)

Ms. Blaine argues that the ALJ's RFC finding does not contain any limitations regarding her need for unscheduled work breaks, her concentration deficits, and her need to miss work related to her debilitating headaches.  (Doc. 11 at 9).  Thus, she argues that the ALJ failed to consider all severe and non-severe impairments and therefore "does not accurately encompass or reflect the impact of plaintiff's chronic and severe occipital headaches[.]"  (*Id*.)  For example, Ms. Blaine argues that she testified at her hearing that her headaches were the main impairment leading to her claim of disability.  (*See* Doc. 7 at 46-47).  These headaches are the result of a pinching of the occipital

nerve, which is incurable, and have gotten worse since her surgery (though initially there was some symptom improvement).  (Doc. 11 at 10).  Finally, Ms. Blaine argues that the ALJ selectively interpreted the record to conclude that Ms. Blaine's headaches were not as severe or frequent.  (*Id*. at 17).

The Commissioner argues that the ALJ's RFC determination was supported by substantial evidence and did not include Ms. Blaine's headache symptom allegations because they were inconsistent with the medical record evidence.  (Doc. 12 at 22-23).  The Commissioner points to the numerous neurological examinations and imaging studies which showed "only mild degenerative changes in the spine, reports of symptom improvement with medication, and Plaintiff's own statements that she only 'occasionally' experienced severe headaches."  (*Id*. at 23 (citing Doc. 7 at 18-20)).

With respect to Ms. Blaine's occipital headaches, the ALJ stated that they were a severe impairment at Step Two, and noted the treatment records which reported Ms. Blaine's "constant" headaches which caused "severe pain, relieved by nothing."  (Doc. 7 at 18).  The ALJ noted Ms. Blaine's testimony that her headaches are present "100 percent of the time" and are a baseline three to four out of ten on a pain scale.  (*Id.*)  She also stated in the records

that her headaches were "constant" and "relieved by nothing." (*Id.*)

The ALJ determined that, based on the record, Ms. Blaine "usually experiences moderate, rather than debilitating pain levels less frequently than alleged." (*Id.*)  "Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence." (*Id.*)  The ALJ then cited medical records which contradict Ms. Blaine's testimony regarding the severity of her headaches, including records indicating she had no difficulty "concentrating, remembering, making decision[s], walking, climbing stairs, dressing, bathing, or doing errands alone" (*Id.* at 805), could do yard work, and her testimony that she drove to Montana four times to care for her parents. (*Id.* at 19).  Additionally, Ms. Blaine herself stated in a survey that she was able to lift up to twenty pounds, and "that she could read as much as she wants and concentrate fully," even with her headaches.  (*Id.* at 18, 623)).  Finally, the ALJ noted that Ms. Blaine's treatment providers generally described her as appearing "comfortable" and with no acute distress.  (*Id.* at 19 (citations omitted)).  This evidence led the ALJ to conclude that the record did not support Ms. Blaine's "allegations of debilitating occipital headaches

occurring multiple times per week." (*Id.* at 19). Thus, the ALJ did not include any restrictions related to Ms. Blaine's headaches in determining her RFC.

The Court, however, finds that the ALJ improperly cherry-picked favorable evidence in order to support his conclusion. "Although it is within the power of the [ALJ] to make findings concerning the credibility of a witness and to weigh conflicting evidence, he cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result." *Gallant v. Heckler*, 753 F.2d 1450, 1455-56 (9th Cir. 1984) (citations omitted). Most notably, in his determination, the ALJ supports his finding that Ms. Blaine's headaches are not as debilitating as alleged by citing to Ms. Blaine's symptom log: "Even the claimant's symptom log documents that she performed tasks even with 'bad' symptoms, such as that she did laundry on January 10, 2014[,] and was 'hurting but up' on September 24, 2014." (Doc. 7 at 19). Of the 267 entries in Ms. Blaine's symptom log over the course of thirteen months, the ALJ selected only two entries which supported his conclusion. While some entries do indicate that Ms. Blaine was feeling better and in little pain, the overwhelming majority of

17

her entries demonstrate that Ms. Blaine is largely bedridden due to pain associated with her neck and headaches. (*See Id.* at 415-27). It is unclear how the ALJ supported his conclusion that Ms. Blaine's headaches were not as severe as alleged simply because she did laundry once in January, and was "up" once in September.

The Court finds that the ALJ improperly disregarded evidence in support of Ms. Blaine's claim. The ALJ found that Ms. Blaine's headaches were a severe impairment at Step Two. (Doc. 7 at 16). Because of this, the ALJ committed legal error by not including any limitations in Ms. Blaine's RFC to reflect her occipital neuralgia. "[T]reatment records also document[] that the claimant usually experiences moderate, rather than debilitating, pain levels less frequently than alleged." (*Id.* at 18). Even if Ms. Blaine's headaches are not as severe or frequent as alleged, and even if Ms. Blaine only experiences severe headaches occasionally, the ALJ must take into consideration whether her moderate to mild headaches preclude her from performing substantial gainful activity. Furthermore, the ALJ must incorporate what effect Ms. Blaine's severe headaches have on her ability to work. It is possible that even with less frequent "debilitating" headaches (*e.g.*

18

twice per week instead of constantly), Ms. Blaine may still meet the threshold for disability.

Ms. Blaine's occipital neuralgia is a "severe" impairment and the ALJ must include its effect in his RFC, based on his own findings and those in the record. Therefore, the Court finds that the ALJ's RFC determination was in error because it did not include provisions for Ms. Blaine's occipital neuralgia, which the ALJ found to be at Step two to significantly limit Ms. Blaine's ability to perform basic work activities. On remand, the ALJ must discuss how the limitations he incorporated into Ms. Blaine's RFC account for her occipital neuralgia, or, if they do not, the ALJ must incorporate further limitations into his RFC to account for her occipital neuralgia and then determine whether she is able to perform her past relevant work or other work with these limitations.

### B. Medical opinion evidence

#### 1. Legal standard

In assessing a disability claim, an ALJ may rely on "opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and

(3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The deference the Commissioner affords physician opinions is dependant upon the classification of the physician. The opinion of a treating doctor is generally entitled to the greatest weight. *Id*. ("As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."); *see also* 20 C.F.R. § 404.1527(c)(2). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830.

"The opinion of a treating physician is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.' " *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)). "However, the opinion of the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Id*.; *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to

the existence of an impairment or the ultimate determination of disability").

Opinions of treating physicians may only be rejected under certain circumstances. *Lester*, 81 F.3d at 830. To discount the controverted opinion of a treating physician, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ can accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors' are correct." *Reddick,* 157 F.3d at 725. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 831. However, "the findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings." *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).

In order to reject the testimony of a medically acceptable treating source, the ALJ must provide specific, legitimate reasons based on substantial evidence in the record.  However, only licensed physicians and certain other qualified specialists are considered "[a]cceptable medical sources."  20 C.F.R. § 404.1513(a).  Nurse practitioners, therapists, and friends are defined as "other sources," § 404.1513(d), and are not entitled to the same deference.  *Id.* (citing § 404.1527; SSR 06–03p).  "Other sources" may be discounted only if the ALJ gives a germane reason for doing so.  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).

### 2.    Analysis

Ms. Blaine argues that the ALJ improperly disregarded the opinion of her treating provider, Devon Parks, PA-C, that Ms. Blaine was disabled. (Doc. 11 at 19).

As an initial matter, Ms. Blaine argues that PA-C Parks is an "acceptable medical source" akin to a physician, rather than a non-acceptable medical source such as a nurse or therapist, and therefore the ALJ was required to provide a specific and legitimate reason to discredit her opinion, rather than the "germane" reason standard for non-acceptable medical sources.

22

(Doc. 11 at 19-20).   She argues that PA-C Parks administered her pain management in close conjunction with Dr. Moore, and that to the extent that a physician's assistant "was working closely with, and under the supervision of" a physician, she would qualify as an acceptable medical source.  (*Id*. at 19-20 (citing *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011).

The Commissioner argues that only "licensed physicians" are acceptable medical sources, and therefore the ALJ may dismiss PA-C Parks's determination if he provides a germane reason for doing so, but, in the alternative, argues the ALJ meets the more stringent test by giving specific and legitimate reasons to discredit PA-C Parks.   (Doc. 12 at 15).   The Commissioner points to the inconsistencies in PA-C Parks's records, specifically that Ms. Blaine appeared to be in "no acute distress," and that PA-C Parks did not perform strength testing to evaluate Ms. Blaine's capabilities. (*Id*. at 17-18).

The Court does not decide at this time whether PA-C Parks's disability determination counts as an acceptable medical source under 20 C.F.R. § 404.1513(a) because the Court finds that the ALJ has met the more stringent

"specific and legitimate reasons" standard applying to acceptable medical sources. *Hill v. Astrue*, 698 F.3d 1153 (9th Cir. 2012).

The ALJ assigned "little weight" to PA-C Parks's determination because "the claimant's treatment history does not support Ms. Parks's opinion, including that Ms. Parks's[sic] consistently noted that the claimant was 'healthy appearing' and in no acute distress.   Moreover, Ms. Parks's treatment notes do not seem to document that Ms. Parks even measured the claimant's strength."   (Doc. 7 at 20) (internal citations omitted).   The ALJ therefore assigned greater weight to the state agency medical consultant, Neal Berner, M.D., who stated that Ms. Blaine could perform light work.  (*Id*.)

Other courts in the Ninth Circuit have noted the problem of ALJs relying on the phrase "no acute distress" to contradict a claimant's subjective complaints.   By itself, the phrase "no acute distress"  may or may not be indicative of disabling pain, and when lacking the proper context, it may be used improperly to undermine a claimant's testimony. *See e.g. Reinertson v. Barnhart*, 127 F. App'x 285, 290 n. 2 (9th Cir. 2005) ("One who suffers from fibromyalgia, a condition marked by 'chronic pain throughout the body,' is not necessarily in 'acute distress.' Without more, that term does not constitute

an objective medical finding that is inconsistent with severe fibromyalgia");
*Bergin v. Berryhill*, 2017 WL 3215555, at *9 (D. Ariz. July 28, 2017) ("It
would seem that a person could experience chronic, disabling pain and yet not
be in acute distress at a particular moment").

Here, however, the ALJ did contextualize this finding.  The ALJ
pointed to an emergency room visit in June of 2015 where Ms. Blaine
appeared to be "significantly uncomfortable."  (Doc. 7 at 19 (citing Doc. 7 at
926).  On that day, the record indicates Ms. Blaine reported she was "about an
8 on a scale of 10."  (*Id.* at 925).  The ALJ contrasted this with PA-C Parks's
own records indicating Ms. Blaine was "healthy-appearing" and in no acute
distress.  (*See id.* at 806, 809, 812, 816, 819, 823-24, 828, 942).  This
inconsistency in PA-C Parks's medical records, combined with the opinions
of the non-examining physicians, is a specific and legitimate reason of an
which is supported by substantial evidence in the record.

The ALJ also discredited PA-C Parks's opinion because her "treatment
notes do not seem to document that Ms. Parks even measured the claimant's
strength."  (*Id.* at 20).  Ms. Blaine argues that this is not fatal to her
determination, and that PA-C Parks's "opinions are based on her longitudinal

history of treating plaintiff and she rendered her opinions–which are her *opinions* regarding what plaintiff is or is not capable of based on her knowledge of plaintiff's symptoms and conditions, not a medically-provable fact." (Doc. 11 at 22) (emphasis in original).

Ms. Parks stated in her report that Ms. Blaine was limited to sitting thirty minutes at a time, standing/walking to twenty minutes at a time, and lifting up to ten pounds occasionally, and never lifting more than twenty pounds. (Doc. 7 at 937-38; *see also* Doc. 11 at 12). Thus, it appears that PA-C Parks did opine on Ms. Blaine's strength, but as the ALJ pointed out, it is not clear how or when PA-C Parks tested Ms. Blaine's strength to come to that conclusion. This discrepancy is a specific and legitimate reason to discredit the opinion of PA-C Parks.

Thus, the ALJ did not err in rejecting the disability determination of PA-C Parks because he provided a specific, legitimate reason for discrediting PA-C Parks's determination which was supported by substantial evidence in the record.

### C.   **Ms. Blaine's testimony**

#### 1.   **Legal standards**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' " *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). In this analysis, the claimant is not required to show "that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Nor must a claimant produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Garrison,* 759 F.3d at 1014.

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1014-1015 (citing *Smolen*, 80 F.3d at 1281); *see also Robbins v. Soc. Sec. Admin*, 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless

an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each").  This is not an easy requirement to meet: "The clear and convincing standard is the most demanding required in Social Security cases."  *Garrison,* 759 F.3d at 1015 (citing *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002).  At the same time, the ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)."  *Id.* (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

When evaluating a claimant's subjective symptom testimony, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988).  The ALJ must identify which testimony she found not credible and why.  *Id.*  The ALJ's credibility determination must set forth findings sufficiently specific to permit the court to concluded that the ALJ did not arbitrarily discredit the claimant's testimony.  *Tommasetti v. Astrue*, 533 F.3d

1035, 1039 (9th Cir. 2008) (quoting *Thomas v. Barhart*, 278 F.3d 947, 958 (9th Cir. 2002)).

The ALJ may consider "ordinary techniques of credibility evaluation," including a claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Thomas*, 278 F.3d at 958-59 (citing *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the Court may not engage in second-guessing. *Id.* (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).

## 2.   Analysis

The ALJ stated that Ms. Blaine's "medically determinable impairments could reasonably be expected to produce some of above the alleged symptoms. However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Doc. 7 at 18). Therefore, the ALJ only accepted

29

Ms. Blaine's testimony "to the extent [her complaints] can reasonably be accepted as consistent with the objective medical and other evidence." (*Id.*)

Ms. Blaine argues that the ALJ selected out-of-context notations in the medical records and failed to provide a discussion of the evidence, rather than just a summary of the evidence. (Doc. 11 at 24). Ms. Blaine cites to *Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015), where the Ninth Circuit held that merely summarizing the medical evidence supporting the ALJ's decision does not suffice as a specific reason to show that ALJ did not arbitrarily discredit the claimant's testimony. (*Id.*) Therefore, she argues, the ALJ failed to provide a specific, clear and convincing reason to reject her testimony because he failed to discuss what of her testimony was not consistent with the medical evidence. (*Id.* at 25).

However, the Court finds that ALJ provided specific reasons for discrediting Ms. Blaine's testimony. The Commissioner argues that the ALJ properly discredited her for four specific, clear and convincing reasons, stating that the ALJ found that: (1) Ms. Blaine's complaints do not comport with the medical evidence in the record, (2) Ms. Blaine made inconsistent statements regarding her symptoms during clinical visits, (3) Ms. Blaine's symptoms

30

improved with conservative treatment, and (4) Ms. Blaine's complaints were

inconsistent with her lifestyle.   (Doc. 12 at 9-12).   The ALJ noted Ms.

Blaine's reporting of "constant" occipital headaches which caused "severe

pain, relieved by nothing." (Doc. 7 at 637).  The ALJ continued:

> However, treatment records also document[] that the claimant usually experiences moderate, rather than debilitating, pain levels less frequently than alleged.  In January and March 2014, she reported 5 out of 10 pain levels and also endorsed an ability to lift up to 20 pounds despite dearly constant occipital headaches, as well as that she could read as much as she wants and concentrate fully.

(*Id*. at 18 (citing 565, 582)).   The ALJ also pointed to the efficacy of

treatment, including records that indicate "Robaxin has been effective," (*id*. at

605), that her medication has "good efficacy without side effects," (*id*. at 600),

and that she benefitted from using Norco without any significant side effects

(*id*. at 695).  (*Id*. at 19).  Finally, the ALJ found that Ms. Blaine's lifestyle and

activities, specifically noting that she could drive from Oregon to Montana to

care for her parents, were inconsistent with her alleged symptoms.  (*Id*. at 19;

*see id*. at 52).

All of these reasons demonstrate that the ALJ provided specific, clear

and convincing reasons to reject her testimony, which are supported by

substantial evidence in the record.  Therefore, the Court finds that the ALJ did

31

not err in rejecting Ms. Blaine's subjective testimony.

### D. Lay witness testimony

#### 1.    Legal standard

"Lay testimony as to a claimant's symptoms is competent evidence which the [ALJ] must take into account, unless he expressly determines to disregard such testimony, in which case 'he must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). Competent lay witness testimony "cannot be disregarded without comment." *Id.* (emphasis in original). The ALJ is not, however, required to discuss every witness's testimony on an individualized, witness-by-witness basis. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). "[I]f the ALJ gives germane reasons for rejecting the testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id.*

Inconsistency with the medical evidence is a germane reason for discounting lay testimony. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (citing *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)). A lay witness's close relationship with the claimant and the possibility that the lay

witness is thereby influenced to help the claimant is a germane reason for doubting a lay witness's credibility and disregarding his testimony. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).  However, an ALJ may not reject a lay witness's statement simply because his is not medically trained. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009).

### 2.   Analysis

The ALJ stated that he considered the third-party statement from Ken Hogan, Ms. Blaine's longstanding boyfriend, but that he gave limited weight to Mr. Hogan's opinion.  "Although claimant is more functionally limited than prior to her cervical spine surgery, her limitations are not to the degree alleged.  Instead, the record establishes that the claimant retains the capacity to drive, prepare meals, and care for her parents."  (Doc. 7 at 20).  The ALJ also dismissed a third-party statement from Ms. Blaine's friend, Robyn Deloach, because it occurred before the alleged onset date and was not applicable to Ms. Blaine's current medical condition.  (*Id.*)

The Commissioner argues that Mr. Hogan's observations of Ms. Blaine from his witness statement are largely similar to the limitations described by Ms. Blaine, which were dismissed by the ALJ.  (Doc. 12 at 19).  "A

contradiction between a [lay] witness's statement and a claimant's activities is a germane reason to reject it." (*Id.* (citing *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001)). Furthermore, because Mr. Hogan's statements are substantially similar to Ms. Blaine's own complaints (which the Commissioner argues were properly dismissed), the ALJ need not provide an individual discussion of Mr. Hogan's statement to the extend the ALJ offered valid reasons to reject Ms. Blaine's subjective complaints. (*Id.* at 21 (citing *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)).

Ms. Blaine argues that the ALJ did not provide a germane reason to discredit Mr. Hogan's testimony. "The ALJ baldly concludes that plaintiff is not as functionally[sic] as alleged–presumably meaning as Mr. Hogan alleged–but the ALJ does not provide any reasons for this conclusion." (Doc. 11 at 27). Furthermore, Ms. Blaine argues that Mr. Hogan did not opine that Ms. Blaine could not drive, prepare meals, or care for her parents, so the reasons provided by the ALJ cannot be germane as to Mr. Hogan. (*Id.*) She does not argue that the ALJ erred in rejecting the statements of Ms. Deloach. (Doc. 13 at 13).

Contrary to the Commissioner's argument, the ALJ did not articulate, as

a germane reason, that Mr. Hogan's written statement (Doc. 7 at 456-57) was similar to the allegations made by Ms. Blaine and therefore dismissed for the same reason.   The ALJ's sole germane reason for dismissing Mr. Hogan's written statement was that, after acknowledging that Ms. Blaine was more functionally limited after her cervical spine surgery, he stated that "the record establishes that the claimant retains the capacity to drive, prepare meals, and care for her parents."  (Doc. 7 at 20).  In *Valentine*, the Ninth Circuit upheld the ALJ's dismissal of a lay witness's testimony because the ALJ specifically stated that she did so for "the same reasons [she] discounted [the claimant's] allegations."   574 F.3d at 694.  Nowhere in the ALJ's decision does it state that Mr. Hogan's testimony was substantially similar to Ms. Blaine's testimony, and therefore dismissed for the same reasons.

> The ALJ gave reasons for rejecting [the claimant's] testimony regarding her symptoms that were equally relevant to the similar testimony of the lay witnesses, and that would support a finding that the lay testimony was similarly not credible. But under our rule that lay witness testimony "cannot be disregarded without comment," the ALJ erred in failing to explain her reasons for disregarding the lay witness testimony[.]

*Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)).  Therefore, the Court rejects the argument that Mr. Hogan's written statement is dismissed to the extent he

dismissed Ms. Blaine's similar allegations because the ALJ did not offer such an explanation as a germane reason in his decision.

The ALJ properly considered the lay witness testimony and did not dismiss it without providing his reasoning.  Thus, the only question is whether Ms. Blaine's capacity to drive, prepare meals, and care for her parents is a germane reason to discount Mr. Hogan's written statement.  Ms. Blaine argues that Mr. Hogan did not say that she could not drive, prepare meals, or care for her parents, and therefore the ALJ's reasons are not germane or related to his statement.  (Doc. 13 at 13).  Ms. Blaine states:

> The ALJ makes no assessment of Mr. Hogan's statements that since October of 2013–when plaintiff alleged she became disabled–she wakes up sick because of head pain and throws up, and on those days she is unable to do anything but lay in bed and cry, or that she longer makes plans with friends and family because she cannot predict how she will feel when she wakes up.

(*Id.* at 13-14 (citing Doc. 7 at 457)).

According to Black's Law Dictionary,  "germane" is synonymous with "relevant" or "pertinent."  Black's Law Dictionary at 756 (9th ed.) (2009).  Here, the ALJ stated that the record indicated that Ms. Blaine could drive, prepare meals, and take care of her parents, which he found to  be inconsistent with the symptoms described by Mr. Hogan's statement.  This reasoning,

36

while not specifically rebutting Mr. Hogan's statement, is at least "related" or "pertinent" to Mr. Hogan's description of Ms. Blaine's physical state. The Court may not substitute its judgment for that of the ALJ if the evidence "reasonably supports either confirming or reversing the ALJ's decision." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). Thus, the Court finds that the ALJ did not err in providing a germane reason for discounting the lay witness testimony of Mr. Hogan.

## VII.  CONCLUSION

Based on the foregoing, the Court recommends that the case be remanded for further proceedings consistent with these Findings and Recommendations.

The Court **FINDS**:

1.    The ALJ's RFC determination is in error because the ALJ failed to consider all of the claimant's medically determinable impairments that affect what the claimant can do in a work setting, specifically Ms. Blaine's occipital neuralgia.

2.    The ALJ properly rejected the disability determination of the treating source because he provided a specific, legitimate reason supported by substantial evidence in the record.

3.    The ALJ provided specific, clear and convincing reasons for rejecting Ms. Blaine's testimony about the severity of her symptoms.

37

4.    The ALJ provided a germane reason to discount the lay witness testimony.

The Court **RECOMMENDS**:

1.    Ms. Blaine's Motion for Summary Judgment be GRANTED in part, and DENIED in part.

2.    The Commissioner's Motion for Summary Judgment be DENIED in part, and GRANTED in part.

3.    The Commissioner's decision denying benefits to Ms. Blaine be REVERSED pursuant to 42 U.S.C. § 405(g) and her claim is REMANDED for additional administrative proceedings consistent with the order.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS AND RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these Findings and Recommendations within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing.  A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge.

38

DATED this 2nd day of August, 2018.

John Johnston
United States Magistrate Judge